STATE *ex rel.* BRUMIT *et al. v.* GRINDSTAFF.

*(Nashville,* December Term, 1935.)

Opinion filed Dec. 16, 1935.

SIMMONDS & BOWMAN, of Johnson City, for appellants.

SAM W. PRICE, of Johnson City, and MACK EVANS, of Elizabethton, for appellee.

MR. JUSTICE DEHAVEN delivered the opinion of the Court.

This is an ouster suit, brought under sections 1877 et seq., of the Code. It is sought by the bill to remove the

defendant, Walter E. Grindstaff, from the office of city councilman of the city of Elizabethton, on the grounds that he, as such councilman, voted for a resolution, unanimously adopted by the council, to authorize the mayor and the city manager to employ a tax collector for the city on a commission of five per cent., with a maximum limitation of $2,400 per year compensation, notwithstanding the charter of the city named the recorder to collect taxes; and, after thus casting his vote, defendant accepted the position thus created, on the terms authorized, and proceeded to collect taxes which were delinquent and taxes not delinquent, accepting commissions thereon, all while he was councilman and receiving his salary as such, and in violation of the charter of the city and the statutes of Tennessee.

Defendant, in his answer, admits that he voted for the resolution to employ a tax collector for the city, believing this to be a wise step to take; denies that there was any previous understanding that he would be selected to fill the position created; asserts that he accepted the position in good faith and without suspicion that it would be unlawful for him to accept the same by appointment from the mayor and the city manager, and that if he violated the charter of the city, or the statutes, he did it through ignorance, oversight, or error, and immediately upon hearing that a question had been raised about his right to hold the position he resigned the same.

The chancellor found from the proof that while the acceptance of the position of tax collector by defendant was a violation of the provisions of the city charter and of the statutes, he had not knowingly or willfully misconducted himself in office, and dismissed the bill. We think the record sustains this finding by the chancellor.

The mayor and the whole council voted for the resolution authorizing the appointment of a tax collector. The idea originated with the mayor, Dr. Hacker. He says: ''It was a thought of my own. In the first place we had several court orders instructing us to collect the taxes. We just had to get in some money with which to pay the school teachers and other city employees. We had been paying them scrip and they were forced to discount that very often quite considerable. I told them it was ridiculous, that we ought to collect these taxes and get some money to pay off with.'' Taxes delinquent for several years existed. We think the council acted in good faith in creating the position of tax collector, and that this action was not the result of any agreement, or conspiracy, to create an office for defendant. It appears that there were several applicants for the position, and that it was not until several days after the adoption of the resolution that defendant was offered the position.

It appears that defendant accounted for all the money he collected for the city, and paid the same into the city treasury. He did not even retain his commissions. He was paid this by check of the treasurer. It is complained that defendant was paid commissions amounting to $337 on 1934 city taxes collected by him in 1935. Under the charter these taxes became delinquent December 1, 1934, but date of delinquency was extended by resolution to April 1, 1935. The commissions so collected by defendant were charged back to him on the books, with his consent, to be refunded out of his salary as councilman. The record discloses no reason why the whole of defendant's salary of $25 per month has not been applied to this debt by the city treasurer.

The allegation in the bill that defendant had used funds

paid to him on taxes for the purpose of purchasing city scrip and bonds at a discount and turned them in to the city on such collections, thus receiving a double benefit of commissions and profits on scrip and bonds, does not appear to be supported by any material evidence and is vigorously denied by defendant.

We do not think that defendant was guilty of knowingly or willfully misconducting himself in office with respect to voting for the resolution creating the position of tax collector, or in accepting appointment to that position, or in respect to matter of the 1934 taxes, or in any other matter mentioned in the bill. In all of these transactions it appears that the defendant acted in good faith and did not corruptly abuse the powers of his office.

The offenses for which an officer may be removed are those specifically enumerated and set forth in section 1877 of the Code. It is provided therein, among other things, that an officer "who shall knowingly or willfully misconduct himself in office, or shall knowingly or willfully neglect to perform any duty enjoined upon such officer by any of the laws of the state," shall forfeit his office and shall be ousted from said office in the manner thereinafter provided. Thus it is apparent from the words of the statute that in order to oust an officer for misconduct or neglect in office it must be alleged and proved that the officer "knowingly or willfully" misconducts himself in office, or neglected a duty enjoined upon him by the laws of the state.

Relators, here, charge defendant with a violation of sections 1874-1876 of the Code, forbidding public officers from becoming interested in public contracts. The fact that defendant was prohibited by this statute from taking the position of tax collector, and was subject to dis-

missal from office thereunder, does not subject him to ouster under section 1877 of the Code, unless it be averred and proved that he "knowingly or willfully" misconducted himself in office by corruptly accepting such position. The violation of sections 1874-1876, when done ignorantly, or through mistake, and without corrupt intent, does not subject the officer to ouster. As said in *State* v. *Perkinson*, 159 Tenn., 442, 445, 19 S. W. (2d), 254, 255: "a distinction must be drawn between the acts done in good faith but unenforceable because the statute makes them so, and acts of willful misconduct, as where a public officer corruptly and fraudulently abuses his powers in making the contract. In the first instance, the contract could not be enforced. In the latter, the officer may be indicted for official corruption . . . and removed from office under the Ouster Law. The remedies are concurrent."

For a willful violation of sections 1874-1876, amounting to a corrupt abuse of official power, the officer could be indicted for official misbehavior. *State* v. *West & Craig*, 82 Tenn. (14 Lea), 38. And misconduct that would sustain an indictment at common law will sustain a proceeding under the Ouster Law. *State* v. *Ward*, 163 Tenn., 265, 43 S. W. (2d), 217.

Under the facts appearing in the record, as found by the chancellor and this court, an indictment at common law could not be sustained against defendant for his violation of sections 1874-1876, because not amounting to willful and corrupt misconduct in office.

The result is that the decree of the chancellor dismissing the suit must be affirmed. The relators will pay the costs of the appeal.